**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**STARK & STARK**
A Professional Corporation
By: Joseph H. Lemkin
PO Box 5315
Princeton, New Jersey  08534-5315
(609) 896-9060
*Attorneys for Kair Harbor Express, LLC*

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 |
| MARK E. PEARSALL, | : | |
| | : | Case No. 26-11672 (CMG) |
| Debtor. | : | |
| ---------------------------------------------------- | : | |
| KAIR HARBOR EXPRESS, LLC, | : | |
| | : | Adv. Pro. No.: |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK E. PEARSALL, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**COMPLAINT FOR DENIAL OF DISCHARGE**
**UNDER 11 U.S.C. SECTIONS 523(a)(2(A) and 523(a)(4)**

Kair Harbor Express, LLC ("KHE" or "Plaintiff") by and through its undersigned

counsel, hereby files this complaint against Mark E. Pearsall (the "Debtor" or "Defendant," as

appropriate) pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4) for a determination that

Defendant's debt to Plaintiff is non-dischargeable, and for such other relief as may be equitable

and just and respectfully states as follows:

**Parties, Jurisdiction And Venue**

1.      Plaintiff KHE is a California limited liability company with its principal office in Long

Beach, California.

2.      Debtor Mark E. Pearsall is the debtor in the above-captioned bankruptcy case pending

4919-3549-8158, v. 1

in this Court. Debtor's address is 39 River Farm Lane, Far Hills, New Jersey 07931.

3. This is an adversary proceeding to determine the dischargeability of debt under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5. Venue is proper in this District because Debtor's bankruptcy case is pending in this Court.

6. Pursuant to Fed. R. Bankr. P. 7008, Plaintiff consents to entry of final orders or judgment by the Bankruptcy Court.

**Background**

7. At all relevant times, Pearsall owned, controlled, and operated CCBRM LLC, a freight broker that contracted with service providers to move imports and exports, and that formerly operated as a licensed freight broker.

8. On or about March 6, 2023, KHE and CCBRM entered into a Logistics Services Price Agreement (the "Agreement") under which CCBRM agreed to provide logistics services, including storage and handling of KHE's solar panel containers.

9. At the time of the Agreement, Pearsall represented that CCBRM had a business facility at 15785 Mountain Avenue, Chino, California (the "Facility") and that KHE's payments under the Agreement would be used to retain the Facility.

10. Following execution of the Agreement, CCBRM employed Motivational Fulfillment and Logistics Services ("MFALS") at that Chino address as CCBRM's warehouse to store KHE's solar panels and provide related handling services.

11. KHE thereafter moved solar panel cargo to that warehouse, and by August 1, 2023, approximately 5,708 pallets had been transported to and warehoused there.

12. From about March 1, 2023 through July 31, 2023, CCBRM invoiced KHE for monthly

4919-3549-8158, v. 1

handling and storage fees, and KHE paid those invoices.

13. KHE paid CCBRM approximately $488,006.00 in storage fees and $72,500.00 in transloading fees, for a total of $560,506.00.

14. Debtor has acknowledged that from March to July 2023 Kair Harbor paid CCBRM approximately $480,000 in storage costs and $72,500 in transloading fees.

15. Despite receiving KHE's payments, CCBRM failed to pay MFALS for warehousing and transloading fees for KHE's solar panels from April 1, 2023 through July 31, 2023.

16. MFALS advised KHE that KHE's cargo would be withheld and not released unless KHE paid what CCBRM owed to MFALS regarding the solar panels, based on MFALS's warehouseman's lien.

17. In or about October or November 2023 KHE was forced to pay MFALS $414,122.80 to obtain possession of its solar panels.

18. KHE incurred additional expenses totaling $120,050.00 to transfer the solar panels out of MFALS's warehouse to another warehouse and pay related inbound and outbound charges.

19. KHE fully performed its obligations under the Agreement, including making all payments to CCBRM from March 1, 2023 through July 31, 2023.

20. Debtor testified at his 341(a) meeting of creditors that litigation in Pennsylvania was straining his business and resulted in the Debtor's bankruptcy filing.

21. Pearsall personally directed the receipt, use, and disposition of the payments made by KHE to CCBRM, and he was the individual who decided whether those funds would be transmitted to MFALS or used for other purposes.

22. Upon information and belief, Pearsall continued causing invoices to be issued to KHE and accepted KHE's payments while concealing that MFALS was not being paid for KHE's storage and while concealing that KHE's cargo was exposed to lien

4919-3549-8158, v. 1

enforcement, non-release, and threatened sale.

23. As a direct result, KHE paid for the same storage and handling twice: first to CCBRM and then again to MFALS, while also incurring transfer-related charges to protect its goods.

## COUNT I

### Non-Dischargeability of Debts Pursuant to 11 U.S.C. § 523(a)(2)(A)

24. Plaintiff repeats each allegation contained in the preceding paragraphs of this complaint as if set forth at length herein.

25. Section 523(a)(2)(A) excepts from discharge any debt for money, property, services, or credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

26. Pearsall, individually and through CCBRM, represented expressly or by necessary implication that KHE's payments for storage and transloading would be used to secure, maintain, and pay for KHE's storage at the Chino facility and that KHE's goods would remain available for release in the ordinary course.

27. Those representations were false when made, or became false while Pearsall continued to invoice and accept payments without disclosing the truth, because MFALS was not being paid for the storage and handling of KHE's goods.

28. Pearsall knew the representations were false, or acted with reckless disregard for their truth, because he controlled CCBRM, knew MFALS was the actual landlord/warehouse provider, knew CCBRM lacked any ownership interest in the Chino facility, and knew the funds received from KHE were not being fully remitted to MFALS for the relevant period.

29. Pearsall intended KHE to rely on those representations and omissions so that KHE

4919-3549-8158, v. 1

would continue paying CCBRM.

30. KHE justifiably relied on those representations and omissions by continuing to remit storage and handling payments to CCBRM rather than paying MFALS directly or moving the goods sooner.

31. As a direct and proximate result of Pearsall's false pretenses, false representations, and actual fraud, KHE sustained damages including at least the amounts it had to pay MFALS to obtain release of its cargo and the additional transfer costs it incurred to protect its property.

32. The debt arising from that conduct is therefore nondischargeable under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff demands judgment (a) denying Defendant's discharge of its debt to KHE pursuant to 11 U.S.C. § 523 (a)(2)(A); (b) for costs of suit, including attorneys' fees; and (c) granting such other and further relief as is just and proper.

## COUNT II

### Non-Dischargeability of Debts Pursuant to 11 U.S.C. § 523(a)(4)

33. Plaintiff repeats each allegation contained in the preceding paragraphs of this complaint as if set forth at length herein.

34. Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

35. For purposes of this Count, KHE entrusted money to CCBRM and Pearsall for the specific purpose of paying warehouse and transloading obligations associated with KHE's solar panels stored at the Chino facility.

36. The KHE payments were therefore lawfully received by Pearsall and/or CCBRM in the first instance.

4919-3549-8158, v. 1

37. After receiving those funds, Pearsall appropriated, retained, or diverted all or part of those funds for a use other than the specific purpose for which they were entrusted, namely paying MFALS for the storage and handling of KHE's goods.

38. The circumstances surrounding the appropriation demonstrate fraudulent intent, including that Pearsall continued to invoice and accept KHE's payments for storage while MFALS remained unpaid, failed to disclose the nonpayment to KHE, and left KHE's cargo exposed to lien enforcement and threatened sale.

39. Debtor's section 341(a) testimony supports the inference of diversion because he admitted KHE paid substantial storage and transloading sums, admitted the funds did not cover the full rental period, and admitted CCBRM had no ownership interest in the facility itself.

40. By wrongfully converting entrusted funds to purposes other than payment of MFALS for KHE's benefit, Pearsall committed embezzlement within the meaning of 11 U.S.C. § 523(a)(4).

41. As a direct and proximate result of that embezzlement, KHE suffered damages in an amount to be determined at trial, including no less than $414,122.80 paid to MFALS and approximately $120,050.00 in related transfer and protection expenses, plus any additional amounts established in this adversary proceeding.

42. The debt arising from that embezzlement is therefore nondischargeable under 11 U.S.C. § 523(a)(4)

**WHEREFORE**, Plaintiff demands judgment (a) that the debts owed by Defendant to the

Plaintiff are not dischargeable pursuant to 11 USC 523(a)(4); (b) for costs of suit, including

attorneys' fees; and (c) granting such other and further relief as is just and proper.

**STARK & STARK**
A Professional Corporation


By:  /s/ *Joseph H. Lemkin*
Joseph H. Lemkin, Esq.

Dated: May 22, 2026

4919-3549-8158, v. 1